Lantz WELCH, and Lantz Welch, P.C., Appellants,

v.

Grant DAVIS, Scott Bethune, Thomas Jones, Tim Brake, Tim Brake, P.C., and Davis, Bethune and Jones, L.L.C., Respondents.

Nos. WD 61089, WD 61731.

Missouri Court of Appeals, Western District.

June 10, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 29, 2003.

Application for Transfer Denied Sept. 30, 2003.

---

R. Lawrence Ward, Kansas City, for Appellant.

Richard E. McLeod, Kansas City, for Respondent.

Before RONALD R. HOLLIGER, Presiding Judge, PAUL M. SPINDEN, Judge, and JAMES M. SMART, Judge.

PER CURIAM.

This case involves consolidated appeals arising from a dispute over fees between Lantz Welch and his firm, Lantz Welch, P.C., and Tim Brake, Grant Davis, Scott Bethune, and Thomas Jones, attorneys who formerly practiced law in association with Welch's firm. The dispute centers on an agreement that Welch entered into with Brake on January 1, 1992. The agreement governed their association and said:

> In the event this Agreement is terminated by either party, any law business may be withdrawn by [Brake] with the understanding that [Brake] shall first reimburse [Welch] any amounts of monies previously advanced by [Welch] on said matters, and it is understood by [Welch] that [Welch] shall not participate in any legal fees in said matters unless the fee therefore has actually been collected and is deposited in the accounts of [Welch].
>
> . . . .
>
> Upon any dissolution of this Agreement, if there is any dispute concerning the matters covered by this Contract between the parties hereto, or their heirs or legatees, the matters shall be referred to a single arbitrator, if the parties or their representatives agree upon one; otherwise, to a board of three arbitrators, of which one shall be selected by each party or his representative to the difference and a third shall be selected by those two; and the decision and award of each single arbitrator or any two of such board, as the case may be, shall be final and binding upon said

parties and their respective representatives.

Davis, Bethune, and Jones were not parties to this agreement or any similar agreement with Welch.

On December 5, 2000, Brake informed Welch that he was terminating the agreement and their association. In the letter, Brake said that he was withdrawing cases, which he identified in an attachment to the letter, and that he had agreed with Davis, Bethune, and Jones, that they would end their association with Welch and form a new law practice in which Brake anticipated having an association.

A dispute erupted between Welch and the new firm, Davis, Bethune and Jones, L.L.C., concerning legal fees in the cases withdrawn by Brake. The dispute centered on a case in which Davis, Bethune, and Jones, L.L.C., had earned approximately $12 million in attorney fees. After Brake informed Welch that he was withdrawing the cases, Davis sent the clients letters seeking their transfer of their cases from Welch to Davis, Bethune and Jones. In a letter to Kimberly Alcorn, Davis said:

> Mr. Welch has announced that he is semi-retired from practicing law. I am writing to inform you that Lantz Welch will not be with our new law firm. I will be practicing with all the same lawyers except Lantz and the new firm name will be Davis, Bethune & Jones, LLC. I will continue to practice at the same location and my telephone and fax numbers remain the same. Mr. Welch can be reached at (816) 587-3773.
>
> I, along with Tom Jones and Tim Brake have handled your case. We would like to continue to represent you. You are not obligated to have me continue to represent you. You can retain another attorney if you wish, including Mr. Welch.

> If you want me to continue to represent you, please sign the enclosed letter indicating your desire. The amount of attorney fees you are obligated to pay will remain the same as the previous Contract of Employment of Attorneys.

Enclosed with this letter was a simple form for Kimberly Alcorn to sign. It said, "I would like for Tim Brake, Grant Davis, Scott Bethune and Tom Jones to represent me in my legal matter." Alcorn signed the form on January 26, 2001.

In April 2001, Welch sued, seeking an order to compel arbitration of the fee dispute among all parties, including Davis, Bethune, and Jones, and, in the alternative, for relief in *quantum meruit*. In response, Brake filed his own application to compel arbitration, but to exclude Davis, Bethune, and Jones as parties to the arbitration. The circuit court granted Brake's application. When the circuit court denied Welch's request that the circuit court reconsider its decision to exclude Davis, Bethune, and Jones as parties to the arbitration, Welch appealed.

On April 8 and 9, 2002, while Welch's appeal was pending, a panel of three arbitrators arbitrated Welch and Brake's dispute. On April 10, the panel issued its award for Brake. In a 2–1 decision, the panel found that Welch and his firm were not entitled to any of the law business withdrawn by Brake pursuant to the January 1, 1992, agreement and were not entitled to share in any of the legal fees paid in connection with that business.

■ On May 21, 2002, Brake, Davis, Bethune, and Jones filed in circuit court a motion for summary judgment on Welch's petition for relief in *quantum meruit*. The circuit court confirmed the arbitration award and granted summary judgment. Welch filed a second appeal.

■ The first appeal raises the issue of whether or not the circuit court erred in not compelling Davis, Bethune, and Jones to arbitrate the dispute that Welch and Brake had concerning their contract. Welch argues that the circuit court should have compelled Davis, Bethune, and Jones to arbitrate, even though they did not sign the contract, because they either were Brake's agents or were third-party beneficiaries to the contract.[1]

■ Even if Welch is correct—and the record leaves much room for doubting that he is—we discern no prejudice to Welch resulting from Davis, Bethune, and Jones' not being compelled to arbitrate. Error without prejudice is not reversible error. *Neavill v. Klemp*, 427 S.W.2d 446, 448 (Mo.1968). The only prejudice that Welch articulates is that to "completely understand the factual basis and merits of [Welch's and Brake's] dispute over legal fees, Davis, Bethune and Jones [were necessary] parties to the arbitration of the dispute," and that he will be subject "to inconsistent results if this dispute is handled in different forums." He does not explain, however, why Davis, Bethune, and Jones' presence as witnesses at the arbitration proceeding was not sufficient to provide the factual basis. We do not accept the contention that compelling them to arbitrate was necessary to his establishing a full factual basis of his dispute with Brake. As for the inconsistent results, the results seem to have been consistent in this case, and, contrary to his concern, inconsistent results seems to be precisely what he desires: Having lost all to Brake, he is hoping to regain some of that loss from Davis, Bethune, and Jones. Even assuming that excluding Davis, Bethune, and Jones from the arbitration was error, it was harmless. Welch suffered no apparent prejudice.

■ In his second appeal, Welch challenges the circuit court's order to confirm the arbitration award. Our review of the circuit court's decision to confirm an arbitration award is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We will affirm the circuit court's decision unless it is not supported by substantial evidence, or it is against the weight of the evidence, or it erroneously declares or applies the law. *Heineman v. Charno*, 877 S.W.2d 224, 227 (Mo.App.1994); *Sheffield Assembly of God Church, Inc. v. American Insurance Co.*, 870 S.W.2d 926, 929 (Mo. App.1994).

---

1. In support of his contention, Welch relies on *Byrd v. Sprint Communications Company, L.P.*, 931 S.W.2d 810, 814–15 (Mo.App.1996), in which this court declared, " 'Federal courts have extended the scope of arbitration clauses, signed by a principal party, to non-signatory agents.' [*Tractor–Trailer Supply Company v. NCR Corporation*, 873 S.W.2d 627, 630 (Mo.App.1994) (citing *Pritzker v. Merrill Lynch Pierce Fenner and Smith, Inc.*, 7 F.3d 1110,-1122 (3d Cir.1993))]. Our colleagues in the Eastern District appear to have adopted this rule as well [in *Tractor–Trailer*]. This court has adopted the rule in the context of allowing non-signatory agents to enforce an arbitration agreement where the agents were co-defendants with the principal who was a signatory to the arbitration agreement. *Madden v. Ellspermann*, 813 S.W.2d 51, 53 (Mo.App. 1991). Because this court has permitted agents to take advantage of arbitration agreements which they were not a party to, consistency would dictate we hold non-signatory agents bound by arbitration agreements signed by their principals. We will adopt such a rule." We painted with too broad a brush in *Byrd*. The issue has nothing to do with consistency but with the application of proper principles of contract and agency law. Those principles will, under the proper circumstances, permit a party to an arbitration agreement to compel an agent of the other party to arbitrate a dispute although the agent did not enter into the agreement. Assuming that they were agents—the record does not establish clearly that they were—we discern nothing about that status that would compel them to submit to arbitration.

■ Two different bodies of law could govern this dispute: the Uniform Arbitration Act, § 435.350 *et seq.*, and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* The latter applies to contracts evidencing transactions involving or affecting interstate commerce. *Edward D. Jones and Company v. Schwartz,* 969 S.W.2d 788, 793 (Mo.App.1998). The grounds for setting aside an arbitration award vary between these two bodies of law. The federal law provides more bases for vacating an award. We need not resolve this issue, however, because we conclude that the premises on which Welch rests for setting aside the arbitrators' award are incorrect.

■ Welch contends that the arbitration award should have been set aside because it purported to enforce an attorney-fee sharing agreement that was contrary to public policy and unenforceable as a matter of law. Welch argues that the award violated two rules of professional conduct, Rules 4–1.5(e) and 4–5.6.[2]

The claim appears disingenuous. In his first appeal, Welch complains that the circuit court erred by not compelling Davis, Bethune, and Jones to arbitrate under the very agreement that he now claims is void. Nevertheless, we consider his point.

■ Welch argues that his agreement with Brake violated Rule 4–1.5(e) because its allocation of fees did not take into account the proportion of services performed by each lawyer. The rule, however, imposes qualifications on the right to divide a legal fee only when "lawyers who are not in the same firm" divide the fee. Rule 4–1.5(e). A "firm" is a "[b]usiness entity or enterprise." Black's Law Dictionary 634 (6th Ed.1990). Brake associated himself with Welch in the practice of law at the law offices of Lantz Welch, P.C. Regardless of the nature of their business relationship—whether or not Brake was an independent contractor as Welch contends—they held themselves out to their clients and practiced together as a single, collective business entity. Welch's apparent belief that they were "not in the same firm" for purposes of the rule governing fee splitting is mistaken.

Welch also believes that his agreement with Brake violated Rule 4–5.6 because it restricted the right to practice following the termination of their relationship. Welch argues that the agreement can be read as granting Brake the power to withdraw law business and preventing Welch from representing a given client without regard for the client's desire. Although the contract is open to Welch's construction, the Supreme Court instructed long ago:

> If the contract can be performed without any violation of law, then it is only a natural and legal presumption that it will be so performed, or at least there is no legal presumption that it will not be so performed. Where a contract is fairly open to two constructions, by one of which it would be lawful and the other unlawful, the former construction should be adopted. But when the language

---

**2.** Rule 4–1.5(e) says, "A division of fee between lawyers who are not in the same firm may be made only if: (1) the division is in proportion to the services performed by each lawyer or, by written agreement with the client, each lawyer assumes joint responsibility for the representation; (2) the client is advised of and does not object to the participation of all the lawyers involved; and (3) the total fee is reasonable." Rule 4–5.6 says,

"A lawyer shall not participate in offering or making: (a) a partnership or employment agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or (b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties."

imports illegality, the courts should not construe it in a different sense, for that would be to make a contract for the parties which they have not made themselves.

*State ex rel. Clayton v. Bland,* 301 Mo. 131, 256 S.W. 757, 758 (1923) (quoting *Lamar Water and Electric Light Company v. City of Lamar,* 128 Mo. 188, 26 S.W. 1025, 1029 (1894)).

Although Welch's and Brake's agreement granted Brake the power to withdraw "law business," Brake could do so only in compliance with the law and his ethical obligations. He was obligated to obtain the clients' consent to withdraw the cases, and this is what happened. Davis, on behalf of Davis, Bethune and Jones, L.L.C., sent letters to the clients involved and indicated that he, Jones, and Brake, had been handling their cases and would like to continue to represent them. The letter also informed the clients that they had the right to be represented by the lawyer of their choice, including Welch. The clients ultimately determined whether their cases would be withdrawn by Brake. We find nothing in the record suggesting that Brake or the arbitrators interpreted the contract in a manner that allowed Brake to prohibit Welch and his firm from representing a client that wanted them.

■ Welch also contends that the circuit court should not have confirmed the arbitration award because the arbitrators exceeded their power by considering an oral agreement that was outside the scope of arbitration. Welch argues:

Despite having defined the arbitration [by asking only for a declaration of the provision concerning his authority to withdraw law business], and testifying under oath that he was not seeking enforcement of an oral agreement, Brake (along with Davis, Bethune and Jones, who all testified at the arbitration) pro-

ceeded to submit two days of testimony about an alleged oral "fill-the-pot" agreement.... Although Welch objected to the admission of such evidence, ... the arbitration panel nevertheless allowed its admission and obviously took that evidence into consideration in rendering its award. The panel therefore considered matters beyond those submitted to it for decision.

■ Arbitrators' authority is limited to deciding matters that are in the scope of the arbitration agreement and have been submitted to them. If they decide matters beyond this scope, they have exceeded their authority. *Hayob v. Osborne,* 992 S.W.2d 265, 269 (Mo.App.1999); *Schwartz,* 969 S.W.2d at 794.

■ The arbitrators arbitrated this dispute in accordance with Welch's and Brake's agreement, and they decided only matters within the scope of the issues submitted to them; that is, whether or not the agreement allowed Brake to withdraw the cases and collect the legal fees. That they may have considered evidence that should not have been admitted in deciding the submitted issue is of no consequence. This is an issue of legal error, and the courts will not consider claims of legal error in arbitration proceedings. *Schwartz,* 969 S.W.2d at 793–94. *See also Lorenzini v. Group Health Plan, Inc.,* 753 S.W.2d 106, 108 (Mo.App.1988) ("An arbitrator's mistake of law ... does not constitute an act in excess of the arbitrator's powers.").

■ In his remaining point on appeal, Welch challenges the circuit court's grant of summary judgment for Davis, Bethune, and Jones on his request for relief in *quantum meruit.* Our review is *de novo. ITT Commercial Finance Corporation v. Mid–America Marine Supply Corporation,* 854 S.W.2d 371, 376 (Mo. banc 1993).

We review the record in the light most favorable to the party against whom the judgment was entered and accord him the benefit of all reasonable inferences. *Id.*

The criteria on appeal for testing summary judgment are no different than those employed by the circuit court originally ruling on the motion. *Id.* We will uphold summary judgment only if the movant establishes that the parties are not contesting a genuine issue of material fact and that he is entitled to judgment as a matter of law. Rule 74.04(c)(3). Both criteria are requisite to summary judgment. "The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *ITT*, 854 S.W.2d. at 380.

Davis, Bethune, and Jones argue that summary judgment was proper because Welch and his firm are not the real parties in interest to the *quantum meruit* action because they were not entitled to participate in any fees from the law business that Brake withdrew. They contend that Brake possessed, as a matter of contract, all rights that Welch may have had in the fees and that Brake is the only one who can enforce those rights. Davis, Bethune, and Jones assert that the arbitrators' decision confirmed this by declaring that Brake alone had a right to all legal fees.

 We agree. Real parties in interest are persons who are directly interested in a lawsuit's subject matter and are entitled to maintain the action. *Janssen v. Guaranty Land Title Company*, 571 S.W.2d 702, 706 (Mo.App.1978). Closely related is the doctrine of standing. *See*

*Shannon v. Hines*, 21 S.W.3d 839, 841 (Mo.App.1999). Standing requires that a party seeking relief have a legally cognizable interest in the subject matter of his suit and a threatened or actual injury. *Darrington v. George*, 982 S.W.2d 823, 825 (Mo.App.1998). The interest at stake may be slight, attenuated, or remote. *Ste. Genevieve School District R–II v. Board of Aldermen of the City of Ste. Genevieve*, 66 S.W.3d 6, 10 (Mo. banc 2002).

In granting summary judgment, the circuit court issued findings of fact and conclusions of law stating that, because the arbitrators determined that the agreement transferred all of Welch's interest in the fees to Brake, Welch "has no legal interest" in them. The circuit court reasoned, "[T]hat these fees are now in the hands of defendants Davis, Bethune and Jones is of no lawful concern of [Welch]." We agree. The arbitrators' award determined that any right Welch may have had to the fees belonged to Brake. If Welch had no right to the fees, he no longer had a legally cognizable interest susceptible of protection via an action in *quantum meruit*. His interest in the subject matter is non-existent.[3]

 Welch counters that he alone had a contractual relationship with the clients involved with the law business withdrawn by Brake, and that Davis, Bethune, and Jones—not Brake—took the cases from him, entered into their own contract, and collected the fees. The issue, however, of who was entitled to the attorneys fees under the agreement was presented to the arbitrators who determined—rightly or

---

3. Welch argues in his reply brief that "Brake's non-receipt of the attorneys' fees at issue is the reason that the arbitration award in his favor, even if ultimately upheld, has no effect on Welch's status as a real party in interest to a *quantum meruit* claim against Davis, Bethune and Jones." We disagree.

Even assuming that Brake did not claim the fees to which the arbitrators determined him entitled, we fail to see how that would resurrect Welch's interest in them. Welch has no cause to concern himself with what Brake does or does not do with his award.

wrongly—that "[Lantz Welch and Lantz Welch, P.C., was] not entitled to participate in any legal fees paid[.]" Pursuant to that award, whatever rights Welch may have had in the fees were no longer his to claim. We will not look behind that award and question whether or not the arbitrators erred in their enforcement of the contract. Even were we to review the arbitration proceedings, we have already noted that we would not consider claims of legal or factual error as we would in reviewing the decision of a court of law. *See Schwartz*, 969 S.W.2d at 793–94.

We conclude that the circuit court did not commit reversible error in limiting the arbitration to Welch and Brake, in affirming the arbitration award, or in granting summary judgment. We affirm the circuit court's judgments. Davis, Bethune, and Jones' two motions to dismiss the first appeal are denied.